NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| DENISE GALGANO, *et al.*, | |
| Plaintiffs, | Civil No. 20-05623 (RBK/SAK) |
| v. | **OPINION** |
| TD Bank, N.A., | |
| Defendant. | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon Defendant's Motion to Dismiss Plaintiffs' Amended Complaint (Doc. 29.) For the reasons stated herein, the motion is **GRANTED IN PART AND DENIED IN PART**.

**I.   BACKGROUND**

This case is a putative class action against TD Bank related to fees charged for activities conducted on out of network ATMS. Plaintiffs Denise Galgano and Tashina Drakeford are both account holders at Defendant TD Bank. (Am. Compl. ¶¶42–43.) Plaintiff Galgano alleges that in 2016 she withdrew $60 in cash from a bank ATM that was not owned or operated by TD Bank, an "out of network ATM." (Am. Compl. ¶42.) As part of her withdrawal, Galgano was prompted to check her balance, and she did so. (Am. Compl. ¶42.) TD Bank charged Galgano two $3 fees—one for the balance inquiry and one for the cash withdrawal—totaling $6. (Am. Compl. ¶42.) Similarly, Plaintiff Drakeford alleges that in 2014 she withdrew $200 in cash from an out of

1

network ATM. (Am. Compl. ¶43.) TD Bank charged Drakeford identical fees for the balance inquiry and the cash withdrawal. (Am. Compl. ¶43.) These fees form the basis of Plaintiffs' claims.

Plaintiffs allege that these fees were wrongfully charged in violation of the Personal Deposit Account Agreement ("Account Agreement") and Personal Fee Schedule Agreement ("Fee Schedule") that Plaintiffs signed when they became accountholders with TD Bank. (Am. Compl. ¶54.) Together the Account Agreement and incorporated Fee Schedule govern Plaintiffs' relationship with TD Bank. The Account Agreement states, in pertinent part, that account holders may use ATMs for four types of transactions: (1) making deposits to Checking, Statement Savings, and Statement Money Market Accounts at TD Bank ATMs; (2) getting cash withdrawals and/or transferring funds from and between Checking, Statement Savings, and Statement Money Market Accounts; (3) making envelope-free deposits; and (4) getting information about the Account balance(s) in the Checking Statement Savings, and/or Statement Money Market Accounts. (Doc. 1-1, "Account Agreement" at 46.) It further states that, by entering into the contract, the account holder "promise[s] to pay the charges listed on the Personal Fee Schedule." (Account Agreement at 4.)

The Fee Schedule provides the types of fees that TD Bank charges account holders when they conduct any of the activities set forth in the Account Agreement. The Fee Schedule provides that TD Bank charges "$0.00" for "using TD ATMs in the U.S. and Canada." (Doc. 1–2, "Fee Schedule" at 1.) However, the Account Agreement and Fee Schedule state that fees will apply when the account holder conducts these activities at a non-TD Bank ATM. The Account Agreement States that TD Bank "may impose a fee, as disclosed on the Personal Fee Schedule, for Account transactions you conduct at an ATM that we do not own or operate." (Account Agreement

2

at 47.) The Fee Schedule states that TD Bank charges $3.00 "[f]or each withdrawal, transfer, and balance inquiry conducted at a non-TD ATM." (Fee Schedule at 1.)

According to Plaintiffs, TD Bank breached the aforementioned contracts by improperly charging a $3 fee for the balance inquiry *and* a $3 fee for the withdrawal from the out of network ATM. Plaintiffs assert that their agreement with TD Bank only contemplates a singular $3 fee for a balance inquiry and withdrawal on an out of network ATM. Plaintiffs initiated this action on May 6, 2020 by filing a Complaint. (Doc. 1.) On October 13, 2020 Plaintiffs filed an Amended Complaint alleging the following causes of action: (1) breach of contract; (2) breach of the duty of good faith and fair dealing; (3) violation of New Jersey's Consumer Fraud Act; and (4) violation of New York Consumer Protection Act General Business Law § 349. (Doc. 27.) On October 13, 2020, Defendant moved to dismiss each of the claims. (Doc. 29, "Mot. to Dismiss.") Plaintiffs opposed (Doc. 30), and Defendant replied (Doc. 31).

## II.     LEGAL STANDARD

When evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). It is not for courts to decide at this point whether the non-moving party will succeed on the merits, but "whether they should be afforded an opportunity to offer evidence in support of their claims." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002). While "detailed factual allegations"

are not necessary, a "plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

### III.   DISCUSSION

#### A.  Choice of Law

As an initial matter, the Court must first determine which law applies to Plaintiffs' claims. The Account Agreement provides that "it is governed by the laws of the jurisdiction in which" Plaintiffs' accounts were opened. (Account Agreement at 26.) The Amended Complaint pleads that Plaintiffs are New York residents and that they maintained their accounts at a TD Bank branch located in the State of New York. (Am. Compl. ¶¶ 13–14.) Based on this, Defendant asserts that New York law applies. (Mot. at 8.) Plaintiffs do not address the choice of law issue.

In federal diversity cases such as this one, the Court looks to the choice-of-law rules of the forum state—the state in which the District Court sits—in order to decide which body of substantive law to apply to a contractual provision, even where the contract contains a choice-of-law clause. *CDK Global, LLC v. Tulley Auto. Grp. Inc.*, 489 F. Supp. 3d 282, 300 (D.N.J. 2020); *see also Homa v. Am. Express Co.*, 496 F. Supp. 2d 440, 447 (D.N.J. 2007). New Jersey courts will "generally uphold[] choice-of-law clauses, so long as the clause 'does not violate New Jersey's public policy.'" *Carrow v. Fedex Ground Package Sys., Inc.*, No. 16-3026, 2017 WL 1217119, at *3 (D.N.J. Mar. 30, 2017) (citing *N. Bergen Rex Transp., Inc. v. Trailer Leasing Co.*, 730 A.2d 843, 847 (1999)). In evaluating whether the clause violates public policy, New Jersey courts apply Section 187 of the Restatement (Second) of Conflicts of Laws, which states that the law of the state chosen by the parties will apply unless:

4

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which would be the state of the applicable law in the absence of an effective choice of law by the parties.

*Portillo v. Nat'l Freight, Inc.*, 323 F. Supp. 3d 646, 651–52 (D.N.J. 2018)

Plaintiffs do not attempt to argue that the choice-of-law provision violates New Jersey public policy.[1] (*See generally* Opp. at. 6.) Moreover, the choice-of-law provision dictates that the laws of the jurisdiction where the account holder opened their account govern the dispute. Therefore, the chosen state would necessarily have a substantial relationship to the parties' transactions. Accordingly, the Court finds that the forum selection clause in the Account Agreement does not violate public policy and is therefore enforceable. As such, the Court will apply federal procedural and New York substantive law to determine the pending motion.

### B. Motion to Dismiss

Plaintiffs' Complaint alleges three causes of action: (1) breach of contract; (2) violation of the New Jersey Consumer Fraud Act; and (3) violation of the New York General Business Law § 349. Defendant moves to dismiss each claim. The Court addresses each claim in turn.

#### 1. Breach of Contract

The Court first turns to the question of whether the Fee Schedule and the Account Agreement adequately set forth when and what fees will be charged by TD Bank for out of network withdrawals and balance inquiries. TD Bank moves to dismiss Plaintiffs' claims on the grounds that the "plain language of the Account Agreement and Fee Schedule . . . explicitly authorize and conspicuously disclose" the $3.00 fees that Plaintiffs allege violate their contracts with TD Bank.

---

[1] Plaintiffs incorrectly rely on the court's analysis in *P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453 (N.J. 2008). That case is inapposite because it did not involve a contractual choice-of-law provision. The analysis changes where, as here, the contract specifically selects a forum's laws to apply.

Thus, the fact that the Account Agreement and Fee Schedule constitute a contract under New York law is undisputed. The primary issue that divides the parties is whether TD Bank may charge a $3.00 fee for *each* separate transaction conducted at an out of network ATM or if the contract allows only one singular $3.00 fee.

"Under New York law, the initial interpretation of a contract is a matter of law for the Court to decide." *Serdarevic v. Centex Homes, LLC*, 760 F. Supp. 2d 322, 328 (S.D.N.Y. 2010). On a motion to dismiss, the Court may dismiss a breach of contract claim for failure to state a claim if the "plain language" of the contract contradicts or fails to support the plaintiff's allegations of breach. *See id.* The Court must first determine whether the contractual language is ambiguous. *Pa. Employers Ins. Co. v. Global Reins. Corp. of Am.*, 693 F.3d 417, 426 (3d Cir. 2012) (*Kass v. Kass*, 696 N.E.2d 174, 180 (1998)). Ambiguities in a contract must be resolved in the plaintiff's favor. *See id.* Therefore, if the Court determines that the language in a contract is ambiguous, the Court leaves it to a factfinder to determine the contract's meaning. *Id.* (citing *Amusement Bus. Underwriters v. Am. Int'l Grp., Inc.,* 489 N.E.2d 729, 732 (1985)); *see also Bank of Am. Corp. v. Lemgruber*, 385 F.Supp.2d 200, 226 (S.D.N.Y. 2005) ("However, 'when the language of a contract is ambiguous, its construction presents a question of fact,' which of course precludes summary dismissal.")

The mere fact that the parties do not agree on the proper construction of a contract does not necessarily make a contract ambiguous. *Pa. Employers Ins. Co.*, 693 F.3d at 426. Rather, courts have found that "[c]ontract language is not ambiguous if it has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion.'" *Id.* "[A] term is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person

6

who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Prior v. Innovative Commc'ns Corp.*, 207 Fed. Appx. 158, 163 (3d Cir. 2006) (interpreting New York law). Additionally, "[t]he rules of construction of contracts require [courts] to adopt an interpretation which gives meaning to every provision of a contract[.]" *Muzak Corp. v. Hotel Taft Corp.*, 133 N.E.2d 688, 690 (1956).

TD Bank argues that the Account Agreement and Fee Schedule state in clear and prominent language the fees that TD Bank charges. As outlined more fully above, the Fee Schedule states that a $3.00 fee will be charged "[f]or each withdrawal, transfer, and balance inquiry conducted at a non-TD ATM." (Fee Schedule at 1.) Defendant argues that "[t]he use of the word 'each' indicates that 'every one of' these transactions, 'regarded and identified separately,' incurs a $3[.00] fee." (Mot. at 9 (citing *Concise Oxford English Dictionary* 449 (11th ed. 2004)). In response, Plaintiffs argue that TD did not "reasonably disclose" the total fee amount in its disclosure. Instead, Plaintiffs allege that "the contract promises that TD Bank will assess a single [out of network] fee . . . , even if an accountholder conducts multiple functions while using an ATM." (Opp. at 2.)

Guided by the aforementioned contract interpretation principles, the Court finds that Plaintiffs' arguments that the contractual language is ambiguous persuasive. In essence, the breach of contract claim can be boiled down to disagreement over how the word "each" is interpreted in the Fee Schedule. Under Plaintiffs' interpretation, the word "each" indicates that TD Bank will charge an account holder a $3.00 fee when an account holder conducts any of the ATM functions. Thus, when an account holder checks their balance and makes a withdrawal in one visit on an out of network ATM, TD Bank will charge $3.00 total. Therefore, a balance inquiry made in conjunction with a cash withdrawal should be viewed as a single transaction for which only a

single $3.00 fee may be assessed by TD Bank. Conversely, under Defendant's interpretation, the word "each" indicates that TD Bank will charge an account holder a separate $3.00 fee for every ATM function. Thus, when an account holder checks their balance on an out of network ATM, TD Bank charges a $3.00 fee, and when an account holder withdrawals cash from an out of network ATM in the same transaction, TD Bank charges another $3.00 fee. Although it is plausible to read "each" as applying to each transaction separately, it is just as plausible to read "each" and "and" in a way which would group the different types of transactions together. In short, the language in the Fee Schedule is ambiguous, and that ambiguity must be read in Plaintiffs' favor at the motion to dismiss stage. Because the Court finds that Plaintiffs' proposed construction is a reasonable construction of the Agreement, Plaintiffs have sufficiently alleged a breach of contract claim resulting from multiple $3.00 fees instead of a single $3.00 fee. Therefore, the motion to dismiss this claim is **DENIED**.

### 2. Breach of Implied Covenant of Good Faith and Fair Dealing

TD Bank additionally moves to dismiss Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing. (Mot. at 13.) Under New York law, all contracts contain an implied covenant of good faith and fair dealing. *Fishoff v. Coty Inc.*, 634 F.3d 647, 653 (2d Cir. 2011). "Where the contract contemplates the exercise of discretion, this pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion." *Id.* (quotation omitted). A claim for breach of the implied covenant "will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract." *Merryman v. J.P. Morgan Chase Bank, N.A.*, No. 15-CV-9188, 2016 WL 5477776, at *11 (S.D.N.Y. Sept. 29, 2016) (quoting *Boart Longyear Ltd. v. All. Indus., Inc.*,

869 F. Supp. 2d 407, 419 (S.D.N.Y. 2012)); *see also Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013).

TD Bank argues that the claim for breach of the implied covenant should be dismissed because it is "entirely duplicative of the contract claim." (Mot. at 14.) The Court agrees. Plaintiffs do not plead any additional obligation required by TD Bank under the contract. Rather, Plaintiffs' breach of contract and breach of implied covenant claims are duplicative because they both arise from the same allegations that TD Bank imposed multiple $3.00 fees on balance inquiries and withdrawals at out of network ATMs. Plaintiffs' arguments regarding TD Bank's "discretion" of whether or not to charge the $3.00 fee is simply a repackaging of their contract theories. The implied covenant of good faith is directed to the parties' promised performances, not their interpretations of the contract. *See CIT Bank, N.A. v. Nwanganga*, 328 F. Supp. 3d 189, 200 (S.D.N.Y. 2018) ("To show a breach of an implied covenant of good faith and fair dealing, [a plaintiff] must provide facts which tend to show that [the defendant] sought to prevent performance of the contract or to withhold its benefits from [the plaintiff]." (quotation omitted)). Therefore, the breach of implied covenant of good faith claim is **DISMISSED WITHOUT PREJUDICE**.

### 3. Violation of New Jersey Consumer Fraud Act

TD Bank additionally moves to dismiss the claim for violation of the New Jersey Consumer Fraud Act ("NJCFA"). The NJCFA provides, in pertinent part, the following:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

9

N.J. Stat. Ann. § 56:8-2. The NJCFA "is intended to protect consumers by eliminating sharp practices and dealings in the marketing of merchandise and real estate." *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 514 (3d Cir. 2006) (quoting *Lemelledo v. Beneficial Mgmt. Corp. of Am.*, 150 N.J. 255, 263 (1997)). In order to state a claim under the NJCFA, a plaintiff must plead the following elements: (1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." *Zaman v. Felton*, 98 A.3d 503, 516–17 (N.J. 2014).

TD Bank asserts that Plaintiffs have not plausibly alleged any violation of the CFA because "the Account Agreement and the Fee Schedule unambiguously provide for TD Bank to charge a $3[.00] fee for each cash withdrawal and balance inquiry transaction conducted at a non-TD Bank ATM." (Mot. at 18.) Therefore, TD Bank asserts that it cannot deceive Plaintiffs by "assessing the very fees that the contract explicitly allows." (Mot. at 18.) As the Court has previously found that the contract's terms are ambiguous, it does not agree with TD Bank's argument that its practices are automatically not deceptive.

However, New Jersey courts have been clear that allegations establishing a breach of contract are not, *per se*, enough to allege a violation of the NJCFA. In other words, allegations of breach of contract, alone, are insufficient to state a claim for violation of the NJCFA, and a plaintiff may not merely repurpose a breach of contract claim into an "unconscionable commercial practice" claim under the NJCFA. *Ciser v. Nestle Waters N. Am. Inc.*, 596 Fed. Appx. 157, 161 (3d Cir. 2015). Rather, a plaintiff must also plead allegations of "substantial aggravating factors" establishing that the conduct was also unconscionable. *See Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994). New Jersey courts have noted that "unconscionability is an amorphous concept obviously designed to establish a broad business ethic." *Id.* (internal citation and

quotations omitted). The standard of conduct that the term "unconscionable" implies is lack of "good faith, honesty in fact and observance of fair dealing." *Id.* (internal citation and quotation omitted).

Applying those principles in this case, the Court finds that Plaintiffs have failed to state a claim for a violation of the NJCFA. As the Third Circuit and the New Jersey Supreme Court have instructed, the "capacity to mislead is the prime ingredient of all types of consumer fraud." *Ciser*, 596 Fed. Appx. at 161 (quoting *Cox*, 647 A.2d at 462.) Beyond mere legal conclusions, Plaintiffs fail to allege that TD Bank's actions rise to the requisite level of unconscionability in order to state a claim under the NJCFA. Rather, Plaintiff's claims merely repackage the breach of contract claim as a NJCFA claim. Accordingly, the claim is **DISMISSED WITHOUT PREJUDICE**.

### 4. Violation of New York General Business Law § 349

TD Bank argues that this claim is barred by the statute of limitations. Claims under New York General Business Law § 349 are subject to a three-year limitations period. *See Corsello v. Verizon New York, Inc.*, 967 N.E.2d 1177, 1184 (N.Y. 2012). Plaintiffs' claims arose in 2014 and 2016, and Plaintiffs did not file this action within three years of the claims arising. Plaintiffs agree that the claim is time-barred. (*See* Opp. at 26 n.4.) Thus, this claim is **DISMISSED WITH PREJUDICE**.

### IV. CONCLUSION

For the reasons contained herein, the Motion to Dismiss (Doc. 29) is **GRANTED IN PART** and **DENIED IN PART**. The Motion is granted to the extent it seeks dismissal of the claims for (1) breach of the duty of good faith and fair dealing; (2) violation of the New Jersey Consumer Fraud Act; and (3) violation of the New York General Business Law § 349. The Motion

11

is denied to the extent it seeks dismissal of the breach of contract claim. An accompanying Order shall issue.

Dated: 6/17/2021                            /s/ Robert B. Kugler
                                                                                 ROBERT B. KUGLER
                                                                                United States District Judge