## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |
|---|---|
| DENISE GALGANO DBA SHEAR ENVY HAIR STUDIO and TASHINA DRAKEFORD, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br>      v.<br><br>TD BANK, N.A.,<br><br>                    Defendant. | CASE NO.: 1:20-cv-5623-KMW-SAK |

---

## PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

---

Stephen T. Sullivan, Jr.
John E. Keefe, Jr.
WILENTZ GOLDMAN &
SPITZER, P.A.
125 Half Mile Road, Suite 100
Red Bank, New Jersey 07701
(732) 855-6060

Taras Kick (pro hac vice pending)
The Kick Law Firm, APC
815 Moraga Drive
Los Angeles, CA 90049
(310) 395-2988

Jeffrey D. Kaliel (admitted pro hac vice)
Sophia Gold (admitted pro hac vice)
KALIEL PLLC
1875 Connecticut Ave., NW, 10th Floor
Washington, D.C. 20009
(202) 350-4783

#13453379.1

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES..................................................................iii

PRELIMINARY STATEMENT...........................................................1

FACTUAL AND PROCEDURAL BACKGROUND..................................3

SUMMARY OF SETTLEMENT.........................................................6

    A. Settlement Class.................................................................6

    B. Settlement Benefits.............................................................7

    C. Settlement Administrator and Settlement Administration Costs...............8

    D. Proposed Notice Program.....................................................9

    E. Release..........................................................................11

    F. Opt-Outs and Objections.....................................................11

    G. Attorneys' Fees, Costs and Service Award....................................12

LEGAL ARGUMENT......................................................................13

I.  STANDARD FOR REVIEW FOR PRELIMINARY APPROVAL..............13

II. THE PROPOSED SETTLEMENT SATISFIES THE PRELIMINARY
    FAIRNESS STANDARD.............................................................15

    A. The Proposed Settlement Resulted from Arm's-Length
       Negotiations...................................................................17

    B. The Discovery Produced in this Matter Was Sufficient for the
       Parties to Understand the Litigation's Facts and Legal Issues.................17

    C. Counsel Are Highly Experienced in Class Action Litigation..................20

i

III.   THE PROPOSED CLASS SHOULD BE CERTIFIED FOR
       SETTLEMENT PURPOSES.....................................................22

       A. The Proposed Class is Too Numerous for Joinder.......................23

       B. There Are Numerous Questions of Law and Fact Common to
          the Class.............................................................23

       C. The Class Representatives' Claims are Typical of the Absent
          Class Members.....................................................24

       D. The Plaintiffs and Class Counsel Have and Will Continue to
          Adequately Represent the Class..................................24

       E. The Rule 23(b)(3) Factors Are Met...............................25

IV.    THE PROPOSED NOTICE TO THE CLASS SATISFIES ALL
       APPLICABLE REQUIREMENTS INCLUDING DUE
       PROCESS.................................................................27

V.     NOTICE PURSUANT TO THE CLASS ACTION FAIRNESS ACT.......28

VI.    THE PROPOSED SCHEDULE OF EVENTS................................29

VII.   CONCLUSION............................................................30

ii

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*In re American Family Enterprises*,
    256 B.R. 377 (D.N.J. 2000)...............................................................21

*In re Auto. Refinishing Paint Antitrust Litig.*,
    MDL No. 1426, 2004 WL 1068807 (E.D. Pa. May 11, 2004) .......................... 14

*Baby Neal v. Casey*,
    43 F.3d 48 (3d Cir. 1994)................................................................... 23

*Bodnar v. Bank of Am., N.A.*,
    No. 14-3224, 2016 U.S. Dist. LEXIS 121506 (E.D. Pa. Aug. 4, 2016)...........19

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001)...........................................................14-15

*In re Checking Account Overdraft Litig.*,
    No. 1:09-MD-02036-JLK, 2015 U.S. Dist. LEXIS 193690
    (S.D. FL. May 22, 2015)....................................................................19

*In re Computron Software, Inc., Sec. Litig.*,
    6 F. Supp. 2d 313 (D.N.J. 1998) ........................................................ 13

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ....................................................................... 28

*Gates v. Rohm and Haas Co.*,
    248 F.R.D. 434 (E.D. Pa. 2008) ........................................................ 18

*In re General Motors Corp Pick-Up Truck*,
    55 F.3d 768 (3d Cir. 1995)................................................................25

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
    194 F.R.D. 166 (E.D. Pa. 2000) ........................................................ 13

#13453379.1

*Johnston v. HBO Film Mgm't, Inc.*,
    265 F.3d 178 (3d Cir. 2001) ................................................................ 24

*Jones v. Commerce Bancorp Inc.*,
    No. 05-600, 2007 WL 2085357 (D.N.J. July 16, 2006) .................... 14

*Mazon v. Wells Fargo Bank, N.A.*,
    No. 10-700, 2011 WL 6257149 (D.N.J. Dec., 14, 2011) ................... 14

*Mehling v. N.Y. Life Ins. Co.*,
    246 F.R.D. 467 (E.D. Pa. 2007) ......................................................... 14

*Mejdrech v. Met-Coil Systems Corp.*,
    319 F.3d 910 (7th Cir. 2003) ............................................................. 26

*Mullane v. Central Hanover Navy Federal & Trust Co.*,
    339 U.S. 306 (1950) ........................................................................... 27

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    259 F.3d 154 (3d Cir. 2001) ............................................................. 24

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
    962 F. Supp. 450, 510 (D.N.J. 1997) ........................................... 21, 23

*Roberts v. Capital One*
    16 Civ. 4841 (LGS), Dkt. 198 (S.D.N.Y. Dec. 1, 2020) ................... 19

*Schertzer v. Bank of Am., N.A.*,
    No. 19CV264 JM(MSB), 2020 WL 1046890 (S.D. Cal. Mar. 4, 2020) ......... 20

*Serrano v. Sterling Testing Sys., Inc.*,
    711 F.Supp.2d 402 (E.D. Pa. 2010) ................................................... 21

*Smith v. Prof'l Billing & Mgm't Servs., Inc.*,
    No. 06-4453, 2007 WL 4191749 (D.N.J. Nov. 21, 2007) ............. 14,16

*Stewart v. Abraham*,
    275 F.3d 220 (3d Cir. 2001) ............................................................. 23

iv

*Sullivan v. D.B. Investments, Inc.,*
   667 F.3d 273 (3d Cir. 2011).................................................................. 25

*In re Warfarin Sodium Antitrust Litig.,*
   391 F.3d 516 (3d Cir. 2004)............................................... 13,15, 22, 23

**Statutes**
29 U.S.C. § 1715……………………………………………………….28

**Rules**
FED. R. CIV. P. 23 ................................................................................. *passim*

**Other Authorities**
MANUAL FOR COMPLEX LITIGATION (FOURTH) (2006)....................................... 14, 27

#13453379.1

## PRELIMINARY STATEMENT

Plaintiffs, Denise Galgano d/b/a Shear Envy Hair Studio and Tashina Drakeford, on behalf of themselves and a proposed class of current and former customers of Defendant TD Bank, N.A. ("TD"), respectfully submit this brief in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement. The Settlement[1]—which was the result of hard-fought, arms' length negotiations between experienced counsel and facilitated by mediator Hon. Elizabeth Laporte (Ret.) of JAMS San Francisco—provides substantial monetary relief for the benefit of the Settlement Class in the form of an $11.9 million, non-reversionary Settlement Fund for distribution to the Settlement Class.

One of the hallmark components of the Settlement is that Settlement Class Members will not have to file claim forms to receive the Settlement's benefits—payments will be made automatically, either by a credit (or direct deposit) to their accounts or by check—and no portion of the Cash Settlement Amount will revert to TD. In addition, TD has agreed to undertake a significant amount of data retrieval and analysis in order to effectuate notice—at a significant savings to the Settlement Class.  As explained below, the Settlement terms are well within the

---

[1]   The capitalized terms in this Brief have the same meaning as those defined in the Settlement Agreement and Release ("Agreement"), which is attached as Exhibit 1 to the Declaration of Counsel.

1

range of reasonableness and are consistent with applicable law. The Settlement satisfies all Third Circuit criteria for Preliminary Approval.

Class Counsel were able to accomplish this substantial and meaningful relief for the Settlement Class Members in an efficient and timely manner based in large part on their skill and expertise in pursuing class action bank fee litigation in jurisdictions across the country. Joint Declaration of Jeffrey Kaliel, Taras Kick and Stephen T. Sullivan, Jr. ("Joint Decl." ¶ 6). Indeed, the instant litigation builds upon two earlier cases litigated by Class Counsel regarding the assessment of OON Fees on balance inquiries undertaken at non-bank ATMs at the same time as a cash withdrawal or transfer.[2] The work, positive case law, and expertise developed in those cases—along with the briefing and important discovery undertaken in this matter—ensured Class Counsel and Plaintiffs were fully informed of the strengths, weaknesses, and damages at issue in the instant litigation prior to commencing settlement discussions.

Accordingly, Plaintiffs respectfully request that this Court enter an order that will: (1) grant Preliminary Approval to the Settlement; (2) certify for settlement purposes the proposed Settlement Class, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3); (3) appoint Plaintiffs as Class Representatives; (4)

---

[2] *Figueroa v. Capital One Bank*, No. 3:18-cv-692-JM-BGS (S.D. Cal.); *Smith v. Fifth Third Bank*, 1:18-cv-00464-DRC-SKB (S.D. Ohio).

2

approve the Notice Program set forth in the Agreement and approve the form and content of the notices; (5) approve and order the opt-out and objection procedures set forth in the Agreement; (6) stay all deadlines in the Action pending Final Approval of the Settlement; (7) appoint as Class Counsel the law firms and attorneys identified herein; and (8) schedule a Final Approval Hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

This case is a putative class action focused on TD's assessment of certain ATM fees.  In addition to a $2 or $3 fee assessed by an out of network ATM owner, TD charged its customers a non-TD ATM fee of $3 each time they withdrew funds from a non-TD ATM.  Plaintiffs do not challenge either of those two fees.  Rather, this Action concerns a third fee assessed by TD when its accountholders check their account balance at a non-TD ATM, referred to herein as an "Out of Network ATM Balance Inquiry Fee" or "OON ATM Balance Inquiry Fee."  Plaintiffs allege that these fees on balance inquiries—resulting in three total fees on a single cash withdrawal at an out of network ATM—violated the terms of TD's Account Agreement.

On May 6, 2020, Denise Galgano d/b/a Shear Envy Hair Studio, on behalf of herself and others similarly situated, filed a class action complaint in the United States District Court for the District of New Jersey (the "Court"), alleging that TD breached Plaintiff's contract with TD, as well as the duty of good faith and fair

3

dealing, and violated New Jersey's Consumer Fraud Act, N.J.S.A. § 56:8-1 *et seq.* Doc. 1. Later, on September 15, 2020, Ms. Galgano and Tashina Drakeford ("Plaintiffs") filed an amended class action complaint, alleging that TD also violated New York General Business Law § 349, *et seq*. Doc. 27.

Defendant filed a Motion to Dismiss on October 13, 2020. Doc. 29. Plaintiffs filed their opposition to the Motion to Dismiss on November 2, 2020. Doc. 30. Defendant replied on November 9, 2020. On June 17, 2021, the Court granted in part and denied in part TD's motion to dismiss the amended class action complaint. Doc. 36.

Discovery then began. The parties proposed a discovery plan, and the Court adopted the proposed deadlines on July 29, 2021. Doc. 46. On July 13, 2021, Plaintiffs served their First Set of Requests for Production and First Set of Interrogatories. Joint Decl. ¶ 7. The parties subsequently exchanged initial disclosures. *Id.* ¶ 8. On September 13, 2021, TD responded to Plaintiffs' First Set of Requests for Production and First Set of Interrogatories. *Id.* ¶ 9. The Parties thereafter negotiated and agreed on an ESI protocol. *Id.* ¶ 10. The Parties met and conferred numerous times regarding Defendant's discovery responses. *Id.* ¶ 11. Similarly, Defendant issued discovery requests to Plaintiffs, to which Plaintiffs duly responded. *Id.* ¶ 12.

4

During that same time period, the parties also met and conferred about settlement. *Id.* ¶ 13. Plaintiffs requested, prior to settlement discussions, that TD retrieve and analyze voluminous account-level transactional data in order to determine class-wide damages for the class period—a process that took months. *Id.* ¶ 14. Only after that analysis was complete and had been verified by Plaintiffs' expert, the Parties agreed to a mediation before the Hon. Elizabeth Laporte (Ret.) of JAMS San Francisco. The mediation was scheduled for February 15, 2022. *Id.* ¶ 15. The Parties submitted detailed mediation statements in connection with that mediation. *Id.* ¶ 16. The parties agreed in principle on a settlement that day, subject to both confirmatory discovery and the resolution of a handful of additional issues through negotiation of a written class settlement agreement. *Id.* ¶ 17.

On February 28, 2022, the Parties filed a Joint Status Report, informing the Court that the Parties had reached a settlement. On May 26, 2022, the Parties informed the Court of the need to perform confirmatory discovery in order to finalize the Settlement Agreement. (Doc. 71). The confirmatory discovery process was laborious and lengthy, and occupied the parties between February, 2022 and October, 2022, in large part due to difficulties in retrieving necessary data. Joint Decl., ¶ 18. Simultaneously, the Parties continued to negotiate the terms of the written settlement agreement, including the plan for providing notice to class members. Joint Decl. ¶ 19. The Parties did not discuss attorneys' fees or any

Service Award for the Class Representatives until after agreeing on the material terms of the Settlement. *Id.* ¶ 20.

## SUMMARY OF SETTLEMENT

### A.   Settlement Class

The Settlement will resolve the claims of the Settlement Class, defined as:

> All TD Bank accountholders in the United States who, within the applicable Class Period, incurred at least one OON ATM Balance Inquiry Fee. Excluded from the Settlement Class are TD Bank; TD Bank's officers and directors at all relevant times, as well as members of their immediate families and their legal representatives, heirs, successors or assigns; and any entity in which TD Bank has or had a controlling interest. Also excluded from the Settlement Class are federal, state, and local governments and all agencies and subdivisions thereunder; and any judge to whom this Action is or has been assigned and any member of her immediate family.

*See* Agreement ¶ 40. The Class Period is defined as:

> For Settlement Class Members whose accounts were established in Connecticut, Massachusetts, Maine, New Jersey, New York, Rhode Island, and Vermont: the period from May 7, 2014, to December 31, 2019;

> For Settlement Class Members whose accounts were established in Virginia and Florida: the period from May 7, 2015, to December 31, 2019;

> For Settlement Class Members whose accounts were established in Pennsylvania: the period from May 7, 2016, to December 31, 2019;

> For Settlement Class Members whose accounts were established in the District of Columbia, Delaware, Maryland, North Carolina, New Hampshire, and South Carolina: the period from May 7, 2017. to

6

December 31, 2019.

*Id.* ¶ 8.

### B.   Settlement Benefits

The Settlement provides meaningful and immediate relief to Settlement Class Members in the form of direct cash payments. TD has agreed to establish a Settlement Fund Account into which it will deposit the $11,900,000.00 Cash Settlement Amount for the benefit of the Settlement Class. *Id.* ¶¶ 43, 48. The Cash Settlement Amount shall be used to pay Settlement Class Member Awards, Administrative Costs, and any attorneys' fees, costs, and Service Awards that the Court may award. *Id.*

Settlement Class Members do not need to submit a claim form in order to receive a Settlement Class Member Award.  The Cash Settlement Amount will be distributed to Settlement Class Members according to the allocation and distribution plan set out in the Agreement, which provides a minimum $2 award for each Participating Settlement Class Member and an additional pro rata amount for Participating Settlement Class Members who incurred more than one OON Fee. *Id.* ¶ 96.

Settlement Class Member Awards to Participating Settlement Class Members with active TD deposit accounts at the time of distribution will be made by TD applying a credit and/or making a direct deposit to their deposit accounts or,

7

if TD is unable to complete credits or direct deposits to certain of those Participating Class Members, by check. *Id.* ¶ 103. Participating Settlement Class Members without active deposit accounts with TD at the time of distribution will receive their Settlement Class Member Awards by check. *Id.* ¶ 101. Checks will remain valid for 90 calendar days. *Id.* ¶ 102.

In the event that there are any residual funds in the Settlement Fund Account after the Class Member Award distributions required by this Agreement are completed, said residual funds shall in no circumstance revert to TD Bank. *Id.* ¶ 110. Subject to the approval of the Court, the residual funds may be distributed to Participating Settlement Class Members through a secondary, pro-rata distribution of the residual less the cost of the secondary distribution. If not feasible, the residual amount may be distributed instead to a residual *cy pres* program chosen by and mutually agreed to by Class Counsel and TD and approved by the Court. *Id.*

### C.     Settlement Administrator and Settlement Administration Costs

The proposed Settlement Administrator is Epiq, a nationally recognized and experienced class action administrator. Joint Decl. ¶ 21. All Administrative Costs will be payable from the Cash Settlement Amount. Agreement ¶ 4. However, TD has agreed to help minimize the costs of administration by a) performing an extensive, detailed analysis of its historical transaction data in order to identify Settlement Class Members; and b) automatically applying an account credit or

direct deposit to the accounts of Participating Settlement Class Members with active deposit accounts with TD—thus obviating the need to print and mail paper checks to these Settlement Class Members.

### D. Proposed Notice Program

The Parties' proposed Notice Program is designed to reach as many Settlement Class members as possible and is the best notice practicable under the circumstances. Joint Decl. ¶ 22. TD's account data will be used to determine the Class List. Agreement, ¶ 57. TD will bear the expense of extracting the necessary data and will then transmit the Class List to the Settlement Administrator. *Id.* Within 90 days after Preliminary Approval, the Settlement Administrator shall implement the Notice Program. *Id.* ¶ 58. The Notice Program consists of (1) the Email Notice; (2) the Mail Notice; and (3) the Long-Form Notice, which will be available on the Settlement Website and to which Settlement Class Members will be directed by the Email Notice and the Mail Notice. *Id.* ¶¶ 59-60.

The Settlement Administrator will create and maintain a Settlement Website containing important information about the Settlement and case-related documents. *Id.* ¶ 44. The Settlement Administrator will also establish a toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries and answer questions of Settlement Class Members who call with or otherwise communicate such inquiries. *Id.* ¶ 50.e.

9

All of the notices will include, among other information, a description of the Settlement's material terms; including, among other information:  a description of the material terms of the Settlement; a date by which Settlement Class Members may exclude themselves from (i.e., opt out of) the Settlement Class; a date by which Settlement Class Members may object to the Settlement; the date, time, and location of the Final Approval Hearing; and the address of the Settlement Website at which Settlement Class Members may access the Agreement, the Long-Form Notice, and other related documents and information. *Id.* ¶ 58, Exs. A-C.

The Settlement Administrator shall (1) send Email Notice to Settlement Class Members for whom the Administrator was provided an email address; and (2) Mail Notice to Settlement Class Members for whom there are no email addresses on file.  *Id.* ¶ 63.  If an email is returned as undeliverable, the Administrator shall mail the Mail Notice to the Settlement Class Member for whom the email was returned as undeliverable.  *Id.*  The Administrator shall run the mailing addresses through the National Change of Address Database before mailing.  *Id.*  If the mailed postcard is returned as undeliverable, the Administrator shall use reasonable efforts to locate a current mailing address for the Settlement Class Member and re-mail the notice to the current mailing address. *Id.*

10

### E.     Release

As of the Effective Date of the Settlement, Plaintiffs and each Participating Settlement Class Member will be deemed to have fully and irrevocably released and forever discharged the Releasees from the Released Claims. Agreement ¶ 111. The Released Claims are those "that relate to, result from, are based upon, or arise out of any of the claims that were asserted in the Action, and any allegations, acts, transactions, facts, events, matters, occurrences, representations, statements, or omissions that were or could have been asserted in the Action." *Id.* The Releases includes both known and unknown claims, and Plaintiffs and the Participating Settlement Class Members also waive any rights they may have under Section 1542 of the California Code. *Id.*

### F.     Opt-Outs and Objections

The Notices will inform Settlement Class Members of their right to opt-out and the deadline to do so. Agreement, Exs. A-C.  Settlement Class Members may opt-out of the Settlement Class at any time before the Opt-Out Deadline. *Id.* ¶¶ 68-70. The Notices will also inform Settlement Class members of their right to object to the Settlement and/or to Class Counsel's application for attorneys' fees, costs, and/or Service Awards. *Id.* ¶¶ 75-77. Objections must be mailed to the Settlement Administrator, and include the information specified in the Long Form Notice. *Id.* Objections must be submitted no later than the Objection Deadline. *Id.* ¶ 76.

11

### G.   Attorneys' Fees, Costs and Service Award

Class Counsel have not been paid for their extensive efforts or reimbursed for litigation costs and expenses incurred. Joint Decl. ¶ 23. The Settlement Agreement provides that Class Counsel will be entitled to apply for an award of attorneys' fees and costs. *See* Agreement ¶ 92. TD has agreed not to oppose a request for attorneys' fees and costs up to one third of the Cash Settlement Amount. Joint Decl. ¶ 24. Such award will serve to compensate for the time, risk and expense Plaintiffs' counsel incurred pursuing claims on behalf of the Settlement Class. *Id.* However, if the Court does not approve an award of fees or costs, in whole or in part, that will not prevent the Settlement from becoming effective nor shall it be grounds for termination.  Agreement ¶ 93.

Class Counsel will also ask the Court to approve Service Awards of $7,500.00 for each of the two Plaintiffs in recognition of their service as Class Representatives. *Id.* ¶ 90. TD does not oppose the requests. *Id.*  However, if the Court does not approve the Service Awards, that will not prevent the Settlement from becoming effective nor shall it be grounds for termination. *Id.* ¶ 91.

12

## LEGAL ARGUMENT

The Court should preliminarily approve the proposed Settlement. The Settlement resulted from months of arm's length, hard-fought negotiations between the parties and their well-informed, well-experienced counsel and the assistance of an experienced mediator. The Settlement provides substantial monetary benefits considering the attendant risks of this litigation. The Settlement is considerably "fair, reasonable and adequate" under the Fed. R. Civ. P. 23 and applicable case law.

## I.   STANDARD OF REVIEW FOR PRELIMINARY APPROVAL

As a matter of public policy, courts favor settlement of disputed claims, particularly in complex class actions, to encourage compromise and conserve judicial and private resources. *See, e.g., In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("there is an overriding public interest in settling class action litigation, and it should therefore be encouraged); *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 174 (E.D. Pa. 2000) ("the law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation"); *In re Computron Software, Inc., Sec. Litig.*, 6 F.Supp.2d 313, 317 (D.N.J. 1998) ("settlements of disputed claims, especially of complex class actions litigations, are favored by the courts").

13

Approval of a class action settlement involves a two-step process: (1) "preliminary approval" of the settlement; and (2) "final approval" of the settlement after notice and a hearing to consider its fairness. *See Mazon v. Wells Fargo Bank, N.A.*, 2011 WL 6257149, *1 (D.N.J. Dec. 14, 2011); *Jones v. Commerce Bancorp Inc.*, No. 05-600, 2007 WL 2085357, at *2 (D.N.J. July 16, 2006). *See also* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632 (2008). The purpose of the preliminary approval process is not to determine ultimately whether the settlement is fair, reasonable and adequate. *Mehling v. N.Y. Life Ins. Co.*, 246 F.R.D. 467, 472 (E.D. Pa. 2007). Rather, a court should grant preliminary approval of a settlement where, as here, "the proposed settlement is the result of the parties good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Smith v. Prof'l Billing & Mgm't Servs., Inc.*, No. 06-4453, 2007 WL 4191749, at *1 (D.N.J. Nov. 21, 2007) (citation omitted); *Jones*, 2007 WL 2085357, at *2 (preliminary approval is granted "unless a proposed settlement is obviously deficient."); *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 WL 1068807, at *2 (E.D. Pa. May 11, 2004) (preliminary approval granted if it falls "within the range of possible approval."). Indeed, the Third Circuit affords an initial presumption of fairness to a class action settlement under preliminary review when the court finds that: (1) the negotiations occurred at arm's-length; (2) there was sufficient discovery; (3) the proponents of the

14

settlement are experienced in similar litigation; and (4) [in the context of final approval of a settlement] only a small fraction of the class objected. *In re Cendant Corp. Litig.*, 264 F.3d 201, 232 n. 18 (3d Cir 2001); *Warfarin Sodium*, 391 F.3d at 535; *Smith*, 2007 WL 4191749, at *1.

The Plaintiffs and Class Counsel respectfully submit that an analysis of these factors strongly supports preliminary approval of the proposed Settlement.

## II.   THE PROPOSED SETTLEMENT SATISFIES THE PRELIMINARY FAIRNESS STANDARD

Class Counsel litigated this case and negotiated the proposed Settlement possessing extensive knowledge of and experience in prosecuting class actions in courts throughout the United States including this one. Joint Decl., at ¶ 25. Class Counsel has successfully litigated and resolved many other consumer class actions, including dozens against financial institutions related to improper fee assessments, recovering hundreds of millions of dollars for those classes. *Id.*, ¶ 26 Class Counsel's experience, resources and knowledge is extensive and formidable. *Id.*, ¶ 27. That background is relevant here, because it is Class Counsel's expertise in this area of law that allowed it to build a novel case against one of the largest financial institutions in the country—and then resolve that matter fairly and efficiently. *Id.* Class Counsel were able to accomplish this substantial and meaningful relief for the Class Members in an efficient and timely manner based in large part on their skill

15

and expertise, and on their development and litigation of two similar cases regarding OON Fees.

While this litigation was novel, it involved practices unearthed and litigated by Class Counsel and that have been pursued and developed by Class Counsel in two other cases, as noted above. Those cases educated Class Counsel about Defendant's practice of assessing multiple OON Fees when customers conduct multiple transactions during a single ATM use and how to evaluate its liability and the suitability of this case for class treatment to obtain a recovery of such fees. Joint Decl. ¶ 28. The work, positive case law, and expertise developed in those cases—along with the briefing and important discovery undertaken in this matter—ensured Class Counsel and Plaintiffs were fully informed of the strength, weaknesses, and damages at issue in the instant litigation prior to commencing settlement discussions.

Though the Court denied Defendant's Motion to Dismiss, in part, in this action, there remained a strong measure of unpredictability in pursuing this Action through contested class certification, summary judgment and trial that supports the fairness of the proposed Settlement. Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay. Plaintiffs believe their claims have merit and they would prevail if the case proceeded to trial. However, TD argues that their claims

16

are unfounded, denies any potential liability and disputes Plaintiffs' ability to certify a class, and up to the point of settlement was willing to litigate those claims vigorously. *Id.* ¶ 29. The Parties concluded the settlement benefits outweigh the risks and uncertainties of continued litigation, as well as the attendant time and expenses associated with further class certification discovery, a contested class certification motion, possible interlocutory review of the class certification ruling, completing merits discovery, pretrial motion practice, trial, and finally appellate review. *Id.* ¶ 30.

### A.   The Proposed Settlement Resulted from Arm's-Length Negotiations

The proposed Settlement resulted from good faith, arm's length negotiations between the parties.  Negotiations were hard-fought with the parties raising and arguing numerous factual and legal issues, including class certification, class ascertainability and the Plaintiffs' and Class' measure of damages.  When the parties settled, Plaintiffs were prepared to simultaneously continue discovery and file their Motion for Class Certification.  Joint Decl., ¶ 31.

### B.   The Discovery Produced in this Matter Was Sufficient for the Parties to Understand the Litigation's Facts and Legal Issues

Settlement discussions did not commence until the Parties had thoroughly investigated the potential range of damages at issue in the case. Joint Decl., ¶ 32. The hard-fought negotiation during the mediation then required yet more

17

confirmatory data analysis. *Id.*, ¶ 33. Separate and apart from the damages discovery, Class Counsel propounded several requests for documents and interrogatories. Counsel consulted with numerous experts regarding the impact of this discovery. Therefore, the Plaintiffs and Class Counsel "conducted sufficient discovery to estimate the merits and value of the Plaintiffs' case . . . and reach a reasonable settlement." *Gates v. Rohm and Haas Co.,* 248 F.R.D. 434, 444 (E.D. Pa. 2008).

The proposed Settlement recovery equates to between 30.5% and 145% of the most likely recoverable damages. Joint Decl., ¶ 34. Plaintiffs' best-case recovery is for a full refund of all improperly assessed OON Fees, and the Settlement represents a nearly one-third recovery of that most aggressive damages measurement. But TD would have argued that even if *any* damages were warranted (which it disputed), at most such would amount to one OON Fee per accountholder, since after the first such fee the accountholder should have been on notice of TD's fee assessment practice and under a duty to mitigate any damages. TD also would have argued that continued use of non-TD ATMs for such transactions would have shown that such class members did not share Plaintiffs' views of the meaning of the contract, as to which this Court found both sides' interpretations to be reasonable. Under this more conservative damages metric (which Plaintiffs would have challenged), the Settlement recovery here amounts to

approximately *145% of damages*. Id. This is well within—and in fact exceeds—the range of reasonableness for class action litigation in this Circuit and elsewhere. *See, e.g., Bodnar v. Bank of Am., N.A.*, No. 14-3224, 2016 U.S. Dist. LEXIS 121506, at *12 (E.D. Pa. Aug. 4, 2016) (approving a cash fund of between 13%-48% of the maximum amount of damages they may have been able to secure at trial, and describing such a result as a "significant achievement" and outstanding"); *In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2015 U.S. Dist. LEXIS 193690, at *37 (S.D. Fla. May 22, 2015) (approving $31,767,200 settlement representing approximately 35% of the most probable aggregate damages); *Hawthorne v. Umpqua Bank*, No. 11-cv-06700-JST, 2015 U.S. Dist. LEXIS 56370, at *9 (N.D. Cal. Apr. 28, 2015) (approving $2,900,000 settlement for approximately 38% of what could have been obtained at trial); *In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2013 U.S. Dist. LEXIS 190562, at *3-4 (S.D. Fla. Aug. 2, 2013) (approving $4,000,000 settlement for 25% of the most probable recoverable damages); *Roberts v. Capital One*, 16 Civ. 4841 (LGS), Dkt. 198 (S.D.N.Y. Dec. 1, 2020) (approving cash fund of approximately 34% of the most likely recoverable damages for class members).

The dispute centers on fees that TD assesses against Accounts for balance inquiries undertaken at a non-TD Bank ATM during the same ATM session as a cash withdrawal or transfer. With this Settlement, Plaintiffs have achieved their

19

desired goal of compensating Settlement Class Members for OON ATM Balance Inquiry Fees during the Class Period. There was a substantial risk they would not achieve that result. Before Settlement, TD sought dismissal. Although this Court denied that motion in part, there was no certainty that Plaintiffs would prevail. In litigation challenging OON Fees, for example, a court in the Southern District of California dismissed similar claims. *Schertzer v. Bank of Am., N.A.*, No. 19CV264 JM(MSB), 2020 WL 1046890 (S.D. Cal. Mar. 4, 2020),

At the time of Settlement, Plaintiffs still had to complete discovery, move for class certification, face a potential interlocutory appeal of class certification, engage in dispositive motion practice and trial, and a potential post-trial appeal. Joint Decl. ¶ 35. And even if Plaintiffs succeeded in those steps, as noted above, the measure of damages was uncertain, given TD's defenses.  While Plaintiffs partially prevailed at the motion to dismiss stage, there is no certainty that the Court would grant certification, that Plaintiffs would survive summary judgment, win at trial, or win on their damages theory. *Id.* ¶ 36. Under the circumstances, Plaintiffs and Class Counsel appropriately determined that the Settlement reached with TD outweighs the gamble of continued litigation. *Id.* ¶ 37.

**C.    Counsel Are Highly Experienced in Class Action Litigation**

Class action litigation attorneys with experience in the relevant legal and factual issues represented the Parties and negotiated with the assistance of a

20

mediator. Joint Decl. ¶ 38.   Class Counsel is particularly experienced in the litigation, certification, trial, and settlement of nationwide class actions cases, as described above. Class Counsel's experience enabled counsel to accurately evaluate the strengths and weaknesses of Plaintiffs' claims and the value of the case. *Id.* ¶ 39. Similarly, seasoned Defense Counsel included well-respected defense firms that vigorously defended TD against Plaintiffs' allegations and have substantial experience in class action litigation. Those defense firms committed significant resources to representing TD.

Recommendations of experienced counsel are entitled to great weight in evaluating a proposed settlement in a class action. *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 543 (D.N.J. 1997), *aff'd*, 148 F.3d 283, 311 (3d Cir. 1998).   "Significant weight" should be given "to the belief of experienced counsel that settlement is in the best interest of the class, so long as the Court is satisfied that the settlement is the product of good faith, arms-length negotiations." *In re American Family Enterprises*, 256 B.R.  377, 421 (D.N.J. 2000); *see also Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402, 414 (E.D. Pa. 2010).

21

## III.   THE PROPOSED CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

Class certification under Rule 23 has two primary components. The party seeking class certification must first establish the four requirements of Rule 23(a): "(1) numerosity ('a class [so large] that joinder of all members is impracticable'); (2) commonality ('questions of law or fact common to the class'); (3) typicality (named parties' claims or defenses 'are typical . . . of the class'); and (4) adequate representation (representatives 'will fairly and adequately protect the interests of the class')." *Warfarin Sodium*, 391 F.3d at 527. Second, the Court also must find that the proposed Class satisfies Fed. R. Civ. P. 23(b). In the present case, the Plaintiffs seek certification under Rule 23(b)(3), which provides "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23. As discussed below, the proposed Settlement Class meets all of the Rule 23 requirements.

#13453379.1

### A.     The Proposed Class is Too Numerous for Joinder

"To meet the numerosity requirement, class representatives must demonstrate only that common sense suggests that it would be difficult or inconvenient to join all class members." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 510 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998). Here, Plaintiffs easily establish the numerosity requirement. Numerosity is satisfied because the Settlement Class consists of more than two million accountholders, and joinder of all such persons is impracticable. Joint Decl. ¶ 40. Therefore, numerosity is easily satisfied. *See Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001) (numerosity requirement satisfied "if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40 . . . .").

### B.     There Are Numerous Questions of Law and Fact Common to the Class

"Rule 23(a)(2)'s commonality element requires that the proposed class members share at least one question of fact or law in common with each other." *Warfarin Sodium*, 391 F.3d at 527-28. "Because the [commonality] requirement may be satisfied by a single common issue, it is easily met." *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). Here, multiple questions of law and fact—centering on TD's use of the same account agreements and disclosures and its alleged systematic practice of assessing OON ATM Balance Inquiry Fees—are common to

23

the Settlement Class and would generate common answers to the claims' viability. Joint Decl. ¶ 41.  Accordingly, commonality is satisfied.

### C.    The Class Representatives' Claims are Typical of the Absent Class Members

For similar reasons, Plaintiffs' claims are reasonably coextensive with those of absent Settlement Class members, satisfying Rule 23(a)(3). Under Rule 23(a)(3), the court must determine whether "the named plaintiffs' individual circumstances are markedly different or . . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." *Johnston v. HBO Film Mgm't., Inc.*, 265 F.3d 178, 184 (3d Cir. 2001).  Typicality does not require that all class members share identical claims.  *Id.*  So long as "the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is usually established regardless of factual differences." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183-84 (3d Cir. 2001). Because the claims arise from the same alleged conduct, the typicality requirement is met.

### D.    The Plaintiffs and Class Counsel Have and Will Continue to Adequately Represent the Class

The adequacy requirement has two components intended to ensure that the absent Class Members' interests are fully represented: (1) the named plaintiffs' interests must be sufficiently aligned with the interests of the absentees, and (2)

24

the plaintiffs' counsel must be qualified to represent the class.  *In re General Motors Corp Pick-Up Truck*, 55 F.3d 768, 800 (3d. Cir. 1995).  In addressing the adequacy of the proposed class representative, the court must examine whether the "the representatives' interests conflict with those of the class."  *Johnston*, 265 F.3d at 185.

Here, Plaintiffs' interests are coextensive with, and not antagonistic to, the interests of the Settlement Class because they and the absent Settlement Class members have the same interest in the relief the Settlement affords. The absent members of the Settlement Class have no diverging interests. Joint Decl. ¶ 43. Further, Plaintiffs are represented by qualified and competent counsel who have extensive experience and expertise prosecuting complex class actions, including consumer actions similar to the instant case. *Id.* ¶ 44. Class Counsel devoted substantial time and resources to this Action and will vigorously protect the interests of the Settlement Class. *Id.* ¶ 45.

### E.    The Rule 23(b)(3) Factors Are Met

Federal Rule of Civil Procedure 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members . . . ."  Fed R. Civ. P. 23(b)(3)(1).  The "predominance inquiry 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. . . .'"  *Sullivan v. D.B. Investments, Inc.*, 667 F.3d 273, 297 (3d Cir.

25

2011) (citations and additional quotation marks omitted). Predominance is "satisfied where common questions generate common answers 'apt to drive the resolution of the litigation.'" *Id.* at 299 (internal citation omitted).

Here, this factor is readily satisfied because liability questions common to all Settlement Class members substantially outweigh any possible individual issues. Joint Decl. ¶¶ 41-42. For example, each Settlement Class Member's relationship with TD arises from the same account agreement and disclosures, and each were charged the same OON ATM Balance Inquiry Fees. *Id.* ¶ 42. Further, resolving millions of claims in one action is far superior to individual lawsuits because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). For these reasons, the Settlement Class should be certified.

In addition to predominance, Rule 23(b)(3) also requires a finding that "a class action [be] superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23. Here, absent class certification, millions of individual Settlement Class Members would be forced to spend large sums of money developing and proving the same issues of liability and damages repeatedly. *See Mejdrech v. Met-Coil Systems Corp.*, 319 F.3d 910, 911 (7th Cir. 2003) (observing that judicial economy and resolution of common issues in one action outweighs repeated proceedings). Notably, since this lawsuit's inception, no individuals, other than the Plaintiffs, have filed suit against TD

26

alleging the same theory of liability for OON Balance Inquiry Fees charged for a balance inquiry conducted during the same session as a withdrawal or transfer also bearing a fee.   Therefore, based upon the above, a class action is the superior method of settling the Plaintiffs' and the Class' common claims against TD.

## IV.   THE PROPOSED NOTICE TO THE CLASS SATISFIES ALL APPLICABLE REQUIREMENTS INCLUDING DUE PROCESS

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Compl. Lit.* § 21.312 (internal quotation marks omitted). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Navy Federal & Trust Co.*, 339 U.S. 306, 314 (1950). "Rule 23 . . . requires that individual notice in [opt-out] actions be given to class members who can be identified through reasonable efforts. Those who cannot be readily identified must be given the best notice practicable under the circumstances." *Manual for Compl. Litig.*, § 21.311.

The proposed Notice Program satisfies due process and Rule 23. As discussed above, the Notice Program provides for direct notice, including Email

Notice and Mail Notice, and the Long-Form Notice available to Settlement Class Members. *See* Fed. R. Civ. P. 23(c)(2) (explaining that individual notice should be provided to all members who can be identified through reasonable effort). Additionally, the Settlement calls for the creation and use of a Settlement Website to be maintained by an experienced Settlement Administrator and an automated toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries and answer questions.

Based upon the above, the notice program represents the "best notice practicable under the circumstances," as it includes individual notice to all members of the Class "who can be identified through reasonable effort." *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Consequently, Plaintiffs respectfully request that the Court approve the proposed notice program.

## V.   NOTICE PURSUANT TO THE CLASS ACTION FAIRNESS ACT

The Class Action Fairness Act ("CAFA") requires that settling defendants give notice of a proposed class action settlement to certain designated officials. 28 U.S.C. § 1715(b). The CAFA Notice of Proposed Settlement must supply all of the information and documents set forth in 28 U.S.C. § 1715(b)(1)-(8). TD will serve the CAFA notice, along with a CD containing the documents described in Section 1715(b).

## VI.    THE PROPOSED SCHEDULE OF EVENTS

The key Settlement-related dates, such as the time to disseminate notice or to opt-out or object, are based on when Preliminary Approval of the Settlement is granted, and when the Final Approval Hearing is scheduled. The Settlement-related dates calculated in accordance with the provisions of the Settlement are:

| EVENT | Proposed Due Date |
|---|---|
| **Complete Email Notice and Mail Notice** | **90 days after Preliminary Approval** |
| **Application for Class Counsel Fees and Service Award** | **30 days after the Notice Deadline** |
| **Opt-Out Deadline** | **60 days after the Notice Deadline** |
| **Objection Deadline** | **60 days after the Notice Deadline** |
| **Plaintiffs' Motion for Final Approval** | **7 days before the Final Approval Hearing** |
| **Final Approval Hearing** | **[No earlier than 180 days after Preliminary Approval]** |

29

## VII.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully requests that the Court: (1) conditionally certify the Settlement Class, (2) appoint Plaintiffs as Class Representatives, (3) appoint Class Counsel, (4) preliminarily approve the Settlement, (5) approve the Notice Program and direct that notice be provided to the Settlement Class members, (6) approve and order the opt-out and objection procedures set forth in the Agreement, (7) stay all deadlines in the Action against TD pending Final Approval of the Settlement, and (8) set a date for a Final Approval Hearing. A proposed Preliminary Approval Order is attached for the Court's convenience.

Respectfully submitted,

**WILENTZ GOLDMAN & SPITZER, P.A.**

By: /s/ Stephen T. Sullivan, Jr.
Stephen T. Sullivan, Jr.
John E. Keefe, Jr.
125 Half Mile Road, Suite 100
Red Bank, New Jersey 07701
(732) 855-6060

Jeffrey D. Kaliel (admitted pro hac vice)
Sophia Gold (admitted pro hac vice)
KALIEL PLLC
1875 Connecticut Ave., NW, 10th Floor
Washington, D.C. 20009
(202) 350-4783

30

Taras Kick (pro hac vice pending)
Jeffrey C. Bilis
The Kick Law Firm, APC
815 Moraga Drive
Los Angeles, CA 90049
(310) 395-2988
*Attorneys for Plaintiffs*

Dated: October 24, 2022

#13453379.1